■ In the Matter of the Dissolution of C & M PLASTICS, INC. JAMES C. COLLINS, as Trustee in Bankruptcy of TERRY L. MATTHEWS, Appellant; DAVID W. COONS et al., Respondents. [599 NYS2d 880] —Yesawich Jr., J. Appeals (1) from an order of the Supreme Court (Ingraham, J.), entered May 22, 1992 in Chenango County, which, in a proceeding pursuant to Business Corporation Law article 11, granted respondents' motion to dismiss the petition, and (2) from the judgment entered thereon.

In 1982, when Bainbridge Plastics Corporation was experiencing financial difficulty, Terry L. Matthews, its part-owner,

and respondent David W. Coons (hereinafter Coons), an employee and plant supervisor with Bainbridge, set out to establish a smaller enterprise to carry on the injection-molding portion of Bainbridge's former business operations. C & M Plastics, Inc., a new corporation, was formed, and Matthews and Coons each took out a commercial loan, using their respective residences as collateral, to raise the capital needed to start the company. In this manner, a total of $66,000 was raised, $26,000 by Matthews and $40,000 by Coons; $49,000 of this amount was used to purchase three injection molding machines formerly used by Bainbridge from the bank that held a security interest in Bainbridge's equipment. In addition, from his share of Bainbridge's assets, Matthews contributed miscellaneous office and manufacturing equipment, $6,000 from a sale of fuel oil, and, importantly, provided C & M with customers (former customers of Bainbridge).

It was originally agreed that Matthews and Coons would own and operate C & M on a "50/50 basis". Subsequently, however, the parties—including Coons' wife, respondent Jean Coons, with whom Coons intended to share his ownership interest—decided that Matthews would not take any stock in the corporation until he had cleared up his personal financial problems; Matthews was contemplating bankruptcy and was also concerned with possible exposure to personal liability because of environmental contamination at the Bainbridge site. The parties disagree as to what the actual terms of the agreement were. Matthews maintains that he was to have a 50% ownership interest in the business, but that he was not to receive any documentation of that interest until after his legal burdens were resolved. The Coonses, on the other hand, contend that Matthews was not to receive any interest in C & M until they agreed that it would no longer be detrimental to the company to issue stock to him. This, they testified, was necessary to allay their fear of losing part of the business to Matthews' creditors in any future bankruptcy proceeding. They also claim that Matthews was to pay an additional $2,000 for his shares, a proposition with which he disagrees.

In any event, the corporation was formed, with Coons as president and his wife as secretary, but no stock was issued at that time. Business commenced, with Coons and Matthews both working full time, taking equal salaries and apparently sharing the responsibility for operating the company. In October 1982, on their own initiative and without informing Matthews, the Coonses issued to themselves 100 shares of stock in C & M, for which they paid $2,000. The company's financial

statements indicated that 100 shares had been issued but Matthews, who reviewed the statements periodically, claims that he did not understand the significance of the notation.

Matthews and his wife filed for personal bankruptcy in July 1983; significantly, they did not list any ownership interest in C & M in the bankruptcy petition. The Matthewses received a discharge in April 1984 and the bankruptcy proceeding was eventually concluded in 1987.

In the summer of 1984, Matthews asked Coons to issue C & M stock to him. Although Coons indicated that they would meet with an attorney to "formalize" it, no such meeting took place. Later, when Matthews discovered that the Coonses had borrowed money from C & M without his knowledge, and that Coons had unilaterally begun drawing a larger salary, Matthews demanded that he be issued the stock which he claimed was rightfully his. Coons refused and ultimately Matthews filed a petition pursuant to Business Corporation Law § 1104 to dissolve the corporation. Because any interest he had in the corporation would have passed to the trustee in his previous bankruptcy, however, this Court found that Matthews did not have standing to bring such a proceeding (see, Matter of C & M Plastics, 168 AD2d 160, 161) and dismissed the petition. After learning of Matthews' claimed interest in C & M, petitioner, Matthews' trustee in bankruptcy, had the bankruptcy proceeding reopened and brought this dissolution proceeding against the Coonses (hereinafter respondents). Respondents moved for summary judgment. After conducting an evidentiary hearing, Supreme Court granted respondents' motion; the court concluded that Matthews did not own 50% of the stock in C & M and that petitioner therefore lacked standing to bring this proceeding. Petitioner appeals.

Initially, we note that any rights that Matthews had when he declared bankruptcy have devolved upon the trustee (see, supra). We note further that the mere fact, without more, that Matthews was never formally issued any stock certificates does not preclude finding that he had the rights of a shareholder (see, Matter of Benincasa v Garrubbo, 141 AD2d 636, 638). Rather, such rights will be found to have vested if there was an agreement to transfer the shares, the agreed upon consideration was paid and any conditions precedent to the issuance of the shares have been satisfied.

We are unpersuaded by respondents' contention that UCC 8-319 renders the alleged agreement to issue stock to Matthews unenforceable. Respondents' admission, under oath, that there

was an agreement to transfer a specified number of shares to Matthews, at a specified price—Jean Coons asserted that the price was to be $20 per share—was sufficient to satisfy the requirements of that section of the UCC.

Furthermore, the testimony establishes that all parties agreed, at the time of incorporation, that Matthews was to receive at some future date a 50% interest in C & M, and the weight of the evidence clearly supports a finding that his contributions to the startup of the company were to constitute the full consideration for that interest. The parties also acknowledge that Matthews' financial concerns were the sole reason for any delay in issuing him stock in C & M, and hence, impliedly, that the purpose of the delay was to assure that his interest remained beyond the reach of his bankruptcy creditors and unavailable to satisfy other financial liabilities for which Matthews might be found responsible.

Petitioner argues that the parties intended for Matthews to receive his ownership interest immediately, with only the formal issuance of the stock certificates to be deferred. Respondents, on the other hand, contend that Matthews was not to acquire any ownership at the time of incorporation, but rather "[l]ater on, after his financial problems were taken care of and it wouldn't hurt the company". If petitioner is correct, Matthews' ownership interest passed to petitioner when the bankruptcy petition was filed and thus petitioner would clearly have standing to bring this dissolution proceeding. Even if respondents are correct, however, it is apparent that any such deferral was made for the express purpose of avoiding the consequences of Matthews' impending bankruptcy, and inasmuch as such an agreement is clearly illegal as an attempt to defraud creditors *(see, J. M. Deutsch, Inc. v Robert Paper Co.,* 13 AD2d 768), it cannot stand. Although respondents suggest that this illegality is sufficient to bar enforcement of their entire agreement with Matthews, including the portion that establishes Matthews' right to a 50% interest in the corporation, this result is unnecessary and would work a substantial forfeiture upon Matthews' creditors, while permitting respondents to retain the financial benefits of the transaction. Where, as here, respondents were aware of Matthews' purposes and assisted him in structuring the transaction, it is more appropriate to sever the illegal portion, which is essentially the only condition precedent to his acquiring the ownership interest for which he had paid, and enforce the remainder of the agreement *(see, Murray Walter, Inc. v Sarkisian Bros.,* 107 AD2d 173, 177-178).

We find that by virtue of the agreement between Matthews and respondents, and his payment of the agreed-upon consideration, Matthews became a 50% owner of C & M at the time of incorporation, and that when the bankruptcy petition was filed that interest vested in petitioner. Accordingly, petitioner has standing to maintain the present proceeding.

Weiss, P. J., Mikoll, Crew III and Casey, JJ., concur. Ordered that the order and judgment are reversed, on the law, without costs, and motion denied.