A. BROD, INC., Plaintiff/Counterclaim
Defendant,

v.

SK&I COMPANY, L.L.C.,
Defendant/Counterclaim
Plaintiff,

and

O.S.P. Publishing, Inc., and Harry Kronen-
berg, an individual, Alan M. Harris, an
individual, and Top Banana Corpora-
tion, Defendants.

A. BROD, INC., Plaintiff/Counterclaim
Plaintiff/Defendant,

v.

MASUDAYA CORPORATION,
Third–Party Defendant.

SK&I COMPANY, L.L.C., Counterclaim
Plaintiff,

v.

MASUDAYA CORPORATION,
Counterclaim Defendant.

No. 96 CIV. 7776(SS).

United States District Court,
S.D. New York.

March 13, 1998.

Andrew Baum, David Leason, Darby & Darby, New York, NY, for Defendant/Counterclaim Plaintiff SK&I Company, LLC; Defendants Harry Kronenberg, Alan Harris, and Top Banana, a div. of SK&I Co. erroneously sued herein as "Top Banana Corporation."

Arthur S. Linker, Paul A. Baumgarten, Rosenman & Colin, LLP, New York, NY, for Third–Party/Counterclaim Defendant Masudaya Corp.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Before the Court are cross-motions for summary judgment of third-party/counterclaim defendant Masudaya Corporation ("Masudaya") and defendant/counterclaim plaintiff SK&I Company, L.L.C. ("SK&I"). At issue in this litigation is the copyright ownership of a product known as Aqua World. Masudaya seeks summary dismissal of (1) Count I of SK&I's amended counterclaims against plaintiff/counterclaim defendant A. Brod, Inc. ("Brod"), which alleges copyright infringement and with respect to which Brod has impleaded Masudaya as a third-party defendant, and (2) SK&I's amended counterclaims against Masudaya, which also allege copyright infringement. SK&I seeks summary adjudication (1) that SK&I is the rightful owner of the copyright at issue, and (2) that Masudaya and Brod are infringing its copyright. For the reasons discussed below, the Court denies both motions.

## BACKGROUND

### I. Facts

In 1992, Masudaya, a Japanese corporation, created the product known as Aqua World, a toy aquarium with moving magnetic toy fish. Masudaya obtained Copyright Registration No. VA543–994 (effective December 7, 1992) for the element of Aqua World referred to as "Sculpture of Fish Toy and Coral." [1]

In 1992, Top Banana, a division of O.S.P. Publishing, Inc. ("OSP"), began purchasing and distributing Masudaya's Aqua World aquariums. By early 1993, Top Banana was Masudaya's exclusive United States distributor of Aqua World. Defendant Harry Kronenberg served as Top Banana's president from approximately January 1992 through January 1995, when OSP closed its Top Banana division and terminated Kronenberg.

In early January 1993, Kronenberg and Masudaya became aware that Great American Fun Corporation ("GAF") was selling an unauthorized copy of Aqua World. In order to protect Top Banana's interest as exclusive distributor, Kronenberg urged Masudaya to retain counsel and bring a lawsuit against GAF to stop sales of the unauthorized products. To this end, Kronenberg recommended and introduced Masudaya to a New York attorney, James Badie.

Masudaya, however, was uncomfortable with litigating in the United States. Eventually, Masudaya and Top Banana agreed that in order to distance Masudaya from the litigation and still enforce the Aqua World copyright, Masudaya would assign its copyright to Top Banana. Top Banana would then bring an infringement action against GAF.

The substance of this arrangement was developed, if not finalized, at a February 1993 dinner meeting in New York. In attendance at the meeting were Kronenberg, Badie, Joseph Angard (OSP's president and chief executive officer), and Hank Saito (Masudaya's executive director of merchandising). What actually transpired at that meeting is the subject of much dispute. Masudaya maintains, and both Angard and Badie testified in their depositions, that at this dinner the contemplated lawsuit against GAF and the proposed assignment of the copyright to Top Banana were discussed. Specifically, Masudaya contends that Kronenberg was a proponent of commencing an action against GAF in order to stop the sale of unauthorized products and protect OSP/Top Banana's interest in the sale of Aqua World; that Angard expressed concern about who was going to pay for the proposed lawsuit; that OSP and Masudaya agreed that Masudaya would pay the legal fees and costs of the lawsuit to be brought by Top Banana; and that OSP and Masudaya agreed, after Kronenberg explained the proposal to Saito, that the copyright would be reassigned to Masudaya at the conclusion of the GAF litigation. Kronenberg admits that he attended the February 1993 dinner meeting, but he testified at his deposition that he cannot recall any details of the discussion.

---

1. Subsequently, Masudaya also obtained three patents for inventions contained within Aqua World.

Shortly after the dinner meeting, Badie drafted an assignment of the copyright from Masudaya to Top Banana. Masudaya executed the assignment on March 10, 1993 (the "1993 Assignment"). The assignment stated in relevant part:

In consideration of the sum of one dollar ($1.00) to us in hand paid, and for other good and valuable consideration, receipt and sufficiency of which we hereby acknowledge, we, MASUDAYA CORPORATION, ... being the owner of all right, title and interest in Copyright Registration VA543–994 ... do hereby sell, assign, transfer and set over unto TOP BANANA CORPORATION ... the entire right, title and interest in and to said copyright registration .... [2]

In early April 1993, Top Banana commenced the infringement action against GAF. Badie served as plaintiff's counsel, and Masudaya paid the legal fees for the lawsuit, which was settled in early June 1993. Top Banana deducted its expenses from the proceeds of the settlement and forwarded the balance to Masudaya.

Kronenberg's employment at OSP ended in January 1995, when OSP closed its Top Banana division. OSP ceased buying Aqua World aquariums from Masudaya, continuing to sell them only until its inventory had been depleted. Around the middle of 1995, Kronenberg formed SK&I and became its president. Before SK&I was officially formed, however, Kronenberg contacted Masudaya to convey that he (presumably through SK&I) would be willing to assist Masudaya in distributing Aqua World throughout the United States. Shortly thereafter, SK&I began buying Aqua World aquariums from Masudaya and selling them in the United States. At least during 1995, the boxes of Aqua World aquariums that SK&I sold bore the following copyright notice: "(C) Masudaya Corp.1994."

During the spring of 1996, Kronenberg telephoned the chief financial officer of OSP, Christopher Lucas, and requested that OSP assign the Aqua World copyright to SK&I because OSP/Top Banana was no longer selling the aquarium. On March 28, 1996, Kro-

nenberg sent Lucas a one-page assignment (the "March 1996 Assignment"); this document did not mention Masudaya. Lucas brought the March 1996 Assignment to Angard, OSP's chief executive officer, who signed it. Angard testified that in signing the March 1996 Assignment, he was under the false impression that the document related generally to a severance settlement with Kronenberg, rather than specifically to the assignment of the Aqua World copyright to SK&I. Angard and Lucas testified that they paid little attention to the document before Angard signed it because the matter seemed of little consequence, especially given that they were in the middle of preparing OSP's registration statement for a public offering.

About a month later, Kronenberg sent Lucas a new version of the assignment (the "April 1996 Assignment") intended to replace the March 1996 Assignment. Kronenberg explained to Lucas that the document had been changed to clarify that Top Banana was a division of OSP. The April 1996 Assignment itself stated that the March 1996 Assignment "erroneously identifies Top Banana as 'Top Banana Corporation,'" when in fact it was a division of OSP. Nowhere, however, did the original March 1996 Assignment refer to Top Banana as "Top Banana Corporation." Rather, it identified Top Banana as "Top Banana[,] a Division of O.S.P. Publishing, Inc." The April 1996 Assignment, which was a two-page document, did add two paragraphs stating that Masudaya had been the original owner of the copyright and that Masudaya had assigned "its entire right, title, and interest in and to the copyright." The references to Masudaya appeared only on the first page of the April 1996 Assignment.

Lucas again brought the assignment to Angard, telling him that it was a document "to sign to complete the Harry Kronenberg business." (Angard Dep., dated June 13, 1997, at 96, attached as Exh. W to Linker Aff.) Angard asked Lucas if he had not already signed a similar document; Lucas explained that there was an error in the original assignment and it had to be resigned.

---

**2.** Although the 1993 Assignment refers to "Top Banana Corporation" as the assignee, the actual assignee was OSP, of which Top Banana was a division.

Angard asked whether signing the replacement document would complete the Kronenberg matter. When Lucas told him it would, Angard signed the April 1996 Assignment in exchange for $10 and "other good and valuable consideration." (April 1996 Assignment, attached as Exh. N to Linker Aff.)

As noted above, the March 1996 Assignment was a one-page document that did not mention Masudaya; the April 1996 Assignment was a two-page document that mentioned Masudaya, but only on the first page. At his deposition, Angard testified that he signed the second page of the April 1996 Assignment, but does not recall seeing the first page with the references to Masudaya. He claimed that if he had seen the first page and the Masudaya references, "it would have rung about 11 bells in my head ... because I did not have the right to transfer the Masudaya copyright to anybody." (Angard Dep. at 198–99.) Angard subsequently acknowledged that he should not have signed the April 1996 Assignment: "My execution of [the April 1996 Assignment] was not correct. That is, I was not supposed to have assigned the copyright to any party other than Masudaya. I regret the inadvertent mistake." (Angard Decl., dated Oct. 17, 1996 .)

Within one week of the execution of the April 1996 Assignment, SK&I recorded the document with the United States Copyright Office.

## II. *Procedural History*

Plaintiff Brod commenced this action on October 15, 1996, by filing a complaint against defendants SK&I, OSP, Top Banana, Harry Kronenberg, and Alan Harris. Brod's dispute with the defendants arose after it entered into an agreement with Masudaya making Brod the exclusive domestic distributor of Aqua World aquariums. (*See* Compl. ¶ 18; Ans. & Am. Countercl. ¶ 28.) SK&I alleges that this agreement and Brod's subsequent conduct violated the prior joint venture agreement allegedly reached between SK&I and Brod. (*See id* . ¶¶ 22–35.) Subsequently, SK&I advised Brod that it owned the Aqua World copyright, and threatened to send letters to Brod's customers stating that Brod's aquariums infringed SK&I's copyright. (*See* Compl. ¶¶ 20–23.)

Brod's complaint seeks a declaratory judgment (1) that Masudaya is the rightful owner of the copyright at issue in the litigation; (2) that defendants' asserted ownership in the copyright is invalid and unenforceable; (3) that Brod's product does not infringe any copyrights or other rights allegedly owned by certain defendants; and (4) that defendants, by virtue of their intent to represent to actual and potential customers of Brod that Brod is infringing their copyright, are unlawfully and tortiously interfering with Brod's business contracts with its customers.

Defendants answered the complaint on November 14, 1996. The answer included counterclaims by SK&I alleging copyright infringement, breach of contract, unjust enrichment, and tortious interference with contractual relations. On December 20, 1996, Brod served a reply to the SK&I counterclaims.

On January 30, 1997, Brod, as a defendant in SK&I's counterclaims, served a third-party complaint impleading Masudaya as indemnitor. Masudaya answered Brod's third-party complaint on February 19, 1997.

On March 18, 1997, SK&I amended its counterclaims to include copyright infringement claims against Masudaya. On April 28, 1997, Masudaya served a reply to SK&I's counterclaims, which was amended on May 14, 1997.

Finally, on September 25 and September 26, 1997, respectively, SK&I and Masudaya each moved for summary judgment.

## DISCUSSION

### I. *Summary of Arguments*

Masudaya first contends that, notwithstanding the clear language of the 1993 Assignment, but in accordance with the clear intent of the parties, it had an oral agreement with OSP/Top Banana that the copyright would be reassigned to Masudaya upon completion of the GAF litigation. Second, even assuming that there was no oral agreement to reassign, Masudaya asserts that it is the equitable owner of the copyright, with OSP having taken only legal title. Based on

this contention, Masudaya asserts two alternative trust theories. The first is that OSP held legal title for Masudaya on an express trust. Masudaya contends that OSP breached this trust in assigning the copyright to SK&I, that SK&I took only legal title subject to the Masudaya–OSP trust, and that Masudaya's equitable interest now prevails over any interest SK&I may · have gained from OSP. Masudaya's second trust theory is that even if an express trust was not created by the Masudaya–OSP assignment, SK&I nevertheless holds its interest in the copyright subject to a constructive trust.

In response, SK&I first disputes that an oral agreement to reassign was ever reached. Moreover, it contends that any such oral agreement is invalid under the Copyright Act, which requires transfers of copyright ownership to be in writing. · Second, it contends that Masudaya's asserted trust-based rights in the copyright are preempted by the Copyright Act. Third, even assuming no preemption, SK&I contends that there is no legal basis for finding that the legal and equitable interests in the copyright had been separated. Alternatively, as an evidentiary matter SK&I · points to the language in the 1993 Assignment and to representations made by Masudaya/OSP during the GAF litigation as proof that Masudaya assigned away its entire interest—both legal and equitable—in the copyright. Finally, SK&I argues that the equitable doctrine of laches bars Masudaya from claiming an interest in the copyright.

## II. *Standard of Review*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all infer-

ences must be drawn in the light most favorable to the non-moving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. At this stage, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

In this case, motions for summary judgment were filed by both Masudaya and SK&I. "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). When faced with cross-motions for summary judgment, the court must consider each motion independently of the other, must in each instance view the facts and draw all reasonable inferences in favor of the non-moving party, and is not required to grant summary judgment for either side. *Id.*

## III. *The Oral Agreement*

Masudaya contends that notwithstanding the written 1993 Assignment, it had an enforceable agreement with OSP/Top Banana that the copyright would be reassigned to Masudaya upon completion of the GAF litigation. At issue in these motions, however, is not whether Masudaya has an enforceable agreement against OSP, but whether

SK&I can be bound to this agreement if it existed between Masudaya and OSP. Under New York law, "the assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless [it] expressly assumes to do so." *Lachmar v. Trunkline LNG Co.*, 753 F.2d 8, 9–10 (2d Cir.1985) (per curiam); *accord 805 Third Ave. Co. v. Excel Mktg. Enter. Corp.*, No. 85-5205, 1987 WL 12822, at *3 (S.D.N.Y. June 18, 1987), *aff'd*, 847 F.2d 834 (2d Cir.1988); *Hudson Eng'g Assocs., P.C. v. Ames Dev. Corp.*, 643 N.Y.S.2d 677, 678, 228 A.D.2d 477, 477–78 (2d Dep't 1996). Masudaya offers no evidence—indeed, it does not even suggest—that SK&I, as OSP's assignee, expressly assumed OSP's obligations under the Masudaya/OSP reassignment agreement. Simply put, contract theory does not enable Masudaya to hold SK&I accountable for any promises made by OSP.

As an alternative to its contract-based theory, however, Masudaya puts forth a trust-based theory under which it contends that SK&I assumed OSP's obligations. The Court now addresses whether SK&I can be bound to OSP's agreement with Masudaya under a trust theory.

## IV. *The Trust Theory*

Masudaya argues that the circumstances surrounding the 1993 Assignment either gave rise to an express trust, with OSP/Top Banana holding legal title to the copyright in trust for Masudaya, or require the imposition of a constructive trust in its favor. This trust theory differs from the contract theory in the following respect. The contract theory takes the 1993 Assignment as having done exactly what it says: transferring "the entire right, title, and interest" in the copyright. It presumes that OSP received all rights, both legal and equitable, in the copyright, and considers whether OSP made a separate oral promise to reassign those rights. By contrast, in advancing its trust theory Masudaya asserts that notwithstanding the unequivocal contract language, it assigned only legal title to OSP and retained equitable title for itself.

According to Masudaya, OSP breached this trust by attempting to assign all legal and equitable rights in the copyright to SK&I. Masudaya contends that because SK&I was not a bona fide purchaser, it took the copyright from OSP also subject to the trust.

SK&I's initial objection to Masudaya's trust theory is that the Copyright Act preempts state trust law. The Court disagrees.

### A. *Preemption*

Section 301(a) of the Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ...." 17 U.S.C. § 301(a). The Act makes clear, however, that "nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ...." *Id.* § 301(b)(3).[3]

Although Congress did not define "equivalence," the courts have given it meaning. In the Second Circuit, the Copyright Act preempts only those state law rights that "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights" provided by federal copyright law. *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). If a state law violation involves an "extra element"—*i.e.*, if it is predicated upon an act beyond mere reproduction or the like—then the right is not "equivalent" to any of the rights within the general scope of the Act. *Id.; see also National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir.1997); *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir.1993); *Harper & Row*, 723 F.2d at 200; 1 Nimmer § 1.01[B][1], at 1–12 to 1–13.

---

**3.** Section 106 confers on a copyright holder the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly. *See id.* § 106(1)-(5).

■ Under this so-called "extra element" test, "[a] state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Computer Assocs.*, 982 F.2d at 716 (citation and internal quotation marks omitted).[4] In determining whether a claim meets this standard, courts must consider "what the [party] seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Id* . Although the extra element test "should not be applied so as to allow state claims to survive preemption easily," *National Basketball Ass'n*, 105 F.3d at 851, "many state law rights that can arise in connection with instances of copyright infringement satisfy the extra element test, and thus are not preempted by section 301." *Computer Assocs.*, 982 F.2d at 717.

■ With respect to Masudaya's trust theory, two sources indicate that the Copyright Act does not preempt such state law rights: legislative history and case law.

### 1. *Legislative History*

As enacted, § 301 describes only generally those state law rights that it preempts—*i.e.*, those rights that are "equivalent" to copyright. As originally drafted, however, § 301(b)(3) included an illustrative list of examples of non-equivalent state law rights:

> Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . activities violating rights which are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106, including breaches of contract, *breaches of trust*, invasion of privacy, defamation, and deceptive trade practices such as passing off and false representation.

H.R. 4347, 89th Cong., 2d Sess. (1966) (emphasis added); *see also* H.R.Rep. No. 94–1476, at 132 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748. Prior to final action by the House of Representatives, three additional examples of non-equivalent state

law causes of action were added to § 301(b)(3): misappropriation, trespass, and conversion. *See* S.22, 94th Cong., 2d Sess. (1976).

In response to concerns regarding the addition of misappropriation, the entire list of examples was deleted from the final version of § 301(b)(3). *See* 122 Cong. Rec. H10910 (Sept. 22, 1976); 1 Nimmer § 1.01[B][1][f][i], at 1–24 to 1–26. Despite this deletion, courts and commentators have agreed that the amendment was not intended to signal the preemption of the previously enumerated examples. *See National Car Rental System, Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 433–34 (8th Cir.1993); *Architectronics, Inc. v. Control Systems, Inc.*, 935 F.Supp. 425, 441 (S.D.N.Y.1996); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1533 (S.D.N.Y.1985); *Factors Etc., Inc. v. Pro Arts, Inc.*, 496 F.Supp. 1090, 1097 (S.D.N.Y.1980), *rev'd on other grounds*, 652 F.2d 278 (2d Cir.1981); 1 Nimmer § 1.01[B][1][f][i], at 1–24. "That a clause has been deleted from a draft of a statute, without more, does not mean that the polar opposite of the clause was enacted, particularly when the clause in question did no more than provide a list of examples that did not purport to be exhaustive." *Architectronics*, 935 F.Supp. at 441. Based upon the legislative history, all indications are that Congress, despite deleting the examples of non-equivalence, viewed those examples—including breaches of trust—as illustrative of non-equivalent, non-preempted state law rights. As discussed below, case law accords with this view.

### 2. *Case Law*

As explained above, the key to the § 301 preemption analysis is whether the state law claim is based upon an extra element that makes it qualitatively different from an infringement claim. In applying the extra element test, courts generally have found that the examples of non-equivalent state law rights listed in the original version of § 301(b)(3) are not preempted by the Copy-

---

4.  For example, a claim "will not be saved from preemption by elements such. as awareness or intent, which alter the [claim's] scope but not its

nature." *Id.* at 717 (citation and internal quotation marks omitted).

right Act. For example, contract claims survive preemption to the extent that they involve a breach of a promise, an element not found in infringement claims. *See Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir.1990) (citing *Smith v. Weinstein*, 578 F.Supp. 1297 (S.D.N.Y.), *aff'd*, 738 F.2d 419 (2d Cir.1984)); *Architectronics*, 935 F.Supp. at 438; *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F.Supp. 926, 931 (S.D.N.Y.1996); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986); 1 Nimmer § 1.0 1[B][1][a], at 1–15 to 1–16.

Here, Masudaya contends that OSP breached a duty of trust in assigning the Aqua World copyright to SK&I. Specifically, Masudaya asserts (1) that OSP owed it a duty of trust based upon an express trust, or, alternatively, (2) that a constructive trust should be established based upon its confidential relationship with OSP and OSP's implied promise to hold the copyright in trust. A breach of a duty of trust or of a confidential promise constitutes an extra element that qualitatively distinguishes state law trust claims from copyright infringement claims. *See* 1 Nimmer § 1.01[B][1][b], at 1–19 ("A breach of trust requires the existence of a trust relationship, which is of course not a prerequisite to a copyright infringement action.") (citing *Davis & Davis v. S & T World Prods.*, 545 N.Y.S.2d 806, 808, 154 A.D.2d 330, 331 (2d Dep't 1989)); *cf. Computer*

*Assocs.*, 982 F.2d at 717 (where "[t]rade secret claims ... are grounded upon a defendant's breach of a duty of trust or confidence ... [t]he defendant's breach of duty is the gravamen of such trade secret claims, and supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying") (citing *Brignoli*, 645 F.Supp. at 1205 (a claim alleging "a breach of ... [a] duty of confidentiality .... is not equivalent to a copyright claim")); *Architectronics*, 935 F.Supp. at 441 (same); *Smith v. Weinstein*, 578 F.Supp. 1297 (S.D.N.Y.) (same), *aff'd*, 738 F.2d 419 (2d Cir.1984).[5] However, although state trust law appears to pass the Second Circuit's extra element test for § 301 preemption, in some instances that body of law may be directly at odds with the Copyright Act's statute of frauds.

B.  *The Copyright Act's Statute of Fraud*

■ Section 204(a) of the Copyright Act, 17 U.S.C. § 101 *et seq.*, states that:

[a] transfer of copyright ownership,[6] other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed ....

Section 204 applies not only to purported oral transfers of copyright ownership, but also to oral agreements to (re)transfer copyright

---

**5.** In arguing to the contrary, SK&I cites *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 946 F.Supp. 420 (M.D.N.C.1996), *aff'd*, 116 F.3d 472 (4th Cir.1997), where the court rejected a constructive trust theory on preemption grounds. The court reasoned:

... the Copyright Act specifically preempts rights recognized under state law that are equivalent to the exclusive rights provided for by federal copyright law.... Here, Plaintiff seeks a declaration of copyright ownership based on state law. The Copyright Act sets out the elements of copyright ownership, and thus, a declaration of ownership is a right exclusively provided for under federal law. Plaintiff's attempt to expand upon or circumvent this right by relying on state law is preempted. *Id.* at 422 (citations omitted). This reasoning is inconsistent with the extra element analysis of the Second Circuit. Ostensibly, this is because the *Food Lion* court viewed "copyright ownership" as an exclusive right under the Copyright Act. However, copyright ownership itself is not

an exclusive right under § 106. That section, which lists the exclusive rights possessed by copyright holders, applies only after a valid copyright owner has been determined. *Cf. Cortner v. Israel*, 732 F.2d 267, 271 (2nd Cir.1984) ("Infringement is the violation of an owner's copyright interest by a non-owner.... The purpose of an infringement suit is to protect the owner's property interest. It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him ...."). In contrast, the prior question of ownership may depend on the application of state law contract or trust principles, subject to § 204. The Court therefore declines to follow *Food Lion*.

**6.** The Act defines "transfer of copyright ownership" as "an assignment ... or any other conveyance ... of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect ...." *Id.* § 101.

ownership in the future. *See Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1161–62 (S.D.N.Y.1988) (an oral agreement to trans- fer a copyright cannot be enforced without a writing); *see also* 3 Nimmer on Copyright § 10.03[A][5], at 10–42 n. 54 (1997).

Under New York law, however, an express trust may be created, and a constructive trust may be imposed, in the absence of a writing. *See Agudas Chasidei Chabad of United States v. Gourary*, 833 F.2d 431, 433– 34 (2d Cir.1987) (express trust may be creat- ed orally or by conduct); *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir.1987) (constructive trust may be imposed on basis of promise inferred from the circumstances surrounding the transaction). In the absence of a writing, § 204(a) of the Copyright Act invalidates a copyright transfer. The Court, however, is not faced in this case with a conflict between federal and state law because, as will be discussed, Masudaya's trust theory is based upon a writing, the Angard Declaration, that satisfies § 204. Accordingly, the Court need not and does not consider whether the Copy- right Act bars recovery under state trust law in the absence of an adequate writing.

Joseph Angard, OSP's president and CEO, has submitted a written declaration in this action, created for purposes of this litigation, stating that Masudaya "temporarily as- signed" the copyright for purposes of the GAF litigation. (Angard Decl., dated Oct. 17, 1996, attached as Exh. O to Linker Aff.) He further confirms that Masudaya and OSP/Top Banana agreed "that when the liti- gation was resolved ... the Registration and all other rights, if any, would be assigned back to Masudaya." (*Id.*) The Copyright Act's writing requirement "is satisfied by the copyright owner's later execution [even dur- ing a litigation] of a writing which confirms the agreement." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2nd Cir. 1982); *see also Magnuson v. Video Yester- year*, 85 F.3d 1424, 1428–29 (9th Cir.1996); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (per curiam); *Tasini v. New York Times Co.*, 972 F.Supp. 804, 810–11 (S.D.N.Y. 1997) (Sotomayor, J.); *Mellencamp*, 698 F.Supp. at 1161–62.[7] By its declaration, OSP has admitted in writing that it had an obli- gation to reconvey the assigned copyright after the GAF litigation concluded and § 204(a) is therefore satisfied.[8]

Having concluded that Masudaya's state law trust theory is not precluded by § 301 or § 204(a) of the Copyright Act, the Court now turns to the substance of that theory as it affects the motions before the Court.

7. Courts that have recognized the validity of a writing created after an oral agreement and dur- ing a litigation have reasoned that "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." *Imperial Resi- dential Design*, 70 F.3d at 99. These courts, however, were presented with situations like that in *Imperial Residential Design* and *Eden Toys*, where a defendant claimed no ownership or as- signment rights in the copyright but simply chal- lenged the right of an oral agreement-based transferee to bring suit. Here, by contrast, SK&I is claiming ownership rights based upon a writ- ten assignment. An argument could be made that permitting a writing created "after-the-fact" to trump the rights of a copyright holder who has a contemporaneously created writing might de- feat § 204(a)'s "paramount" purpose of "enhanc- ing predictability and certainty of copyright own- ership." *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). However, the timing of the writing's creation is not what causes uncertainty for defendants like SK&I. The uncertainty is cre- ated by assignors, like OSP, who breach their obligations and misrepresent their right to assign copyrights they have promised to convey or re- convey to others. These breaches and misrepre- sentations are not avoided by a pre-existing writ- ing because the party who is bound simply chose to ignore obligations it is prepared to admit existed in a judicial proceeding. Therefore, there is little reason not to extend the holdings of cases like *Eden Toys* and *Imperial Residential Design* to situations like this one, particularly where a de- fendant like SK&I, for the reasons to be more fully discussed above, is affected by the OSP/Ma- sudaya agreement, whenever memorialized, only if it had knowledge of the agreement.

8. The Angard Declaration can also be viewed as a judicial admission, which generally takes a contract out of a statute of frauds. *See, e.g., Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 446–47 (2d Cir.1993) (construing N.Y. U.C.C. Law § 8–319(d)); *In re C & M Plastics Inc.*, 599 N.Y.S.2d 880, 882, 194 A.D.2d 1020, 1022 (3rd Dep't 1993) (same).

## C. *Express Trust*

To create a valid express trust under New York law, four essential elements must be proved: (1) a designated beneficiary, (2) a designated trustee, (3) a clearly identifiable res, and (4) delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee. *Agudas Chasidei Chabad*, 833 F.2d at 433–34. An express trust may be created orally or in writing; no particular form of words is necessary. *Id.* at 434. Alternatively, an express trust may arise by implication from the conduct of the settlor. *Id.; Caballero v. Anselmo*, 720 F.Supp. 1088, 1096 (S.D.N.Y.1989). In any event, the inference of an intent to create an express trust must be supported by unequivocal evidence. *Agudas Chasidei Chabad*, 833 F.2d at 434; *United States v. Sun Myung Moon*, 718 F.2d 1210, 1224 (2nd Cir.1983). "The words and acts relied upon must ... admit of no other interpretation than that the property was to be held in trust." *Elyachar v. Gerel Corp.*, 583 F.Supp. 907, 922 (S.D.N.Y.1984).

Before addressing the elements of an express trust, the Court notes that, contrary to SK&I's position, legal and equitable interest in a copyright may be held separately. As cases pre-dating the 1976 Copyright Act make clear, a copyright may constitute a proper trust res, with the trustee holding legal title to the copyright and the settlor retaining equitable title. *See Machaty v. Astra Pictures, Inc.*, 197 F.2d 138 (2d Cir. 1952); *Manning v. Miller Music Corp.*, 174 F.Supp. 192 (S.D.N.Y.1959). The 1976 Copyright Act did not change this, but rather codified the notion that both the equitable, or "beneficial," owner of a copyright and the legal owner have standing to sue for infringement. *Cortner v. Israel*, 732 F.2d 267, 271 (2nd Cir.1984) (discussing 17 U.S.C. § 501(b)); *cf.* 3 Nimmer § 12.02[C], at 12–57 (with regard to "[w]ho constitutes the 'beneficial' owner of a copyright" under § 501(b), "[p]resumably, reference is intended to the general law of trusts"). This is precisely what Masudaya argues the 1993 Assignment was designed to do—transfer legal title to OSP so that OSP would have standing to enforce the Aqua World copyright.

Turning to the elements of an express trust, it is evident that the central issue here is whether Masudaya assigned its copyright "with the intent of vesting legal title" in OSP/Top Banana. As previously discussed, Masudaya relies upon the Angard Declaration as creating the trust. Whether that agreement reflects an unequivocal intent to create a trust, however, is an issue of fact. A reasonable finder of fact could conclude that Masudaya transferred the copyright to OSP with the intent to vest only legal title in OSP as trustee, thereby creating an express trust between itself and OSP. On the other hand, in light of the unequivocal transfer language of the 1993 Assignment ("the entire right, title and interest") and Badie's statements to the Court during the GAF litigation,[9] a reasonable finder of fact also could conclude that Masudaya did not intend to create an express trust. Therefore, the question of whether OSP held legal title to the Aqua World copyright on an express trust for Masudaya is not appropriate for summary adjudication.

Further, even if a finder of fact determined that an express trust was created, the matter would not be at an end because OSP assigned its entire interest to SK&I without reconveying any interest to Masudaya. Thus, the question would remain whether Masudaya's equitable interest in the copyright prevails over SK&I's legal interest as a subsequent transferee. In order for Masudaya to recover the copyright in equity from SK&I, Masudaya would need to demonstrate that SK&I was not a bona fide purchaser— that is, that SK&I did not take the trust

---

9. At a hearing before Judge Sprizzo pertaining to the GAF litigation, Badie stated that "Masudaya is the assignor. They assigned their rights, *all their rights*, so it inures to the benefit of the assignee." (SK&I's Record of References, Tab 1, emphasis added.) However, two points may diminish the impact of this statement. First, at the time Badie made this statement, he arguably was acting in a legal capacity more for OSP/Top Banana than for Masudaya. Second, subsequent colloquy between Badie and Judge Sprizzo may suggest that Badie's statement was a poorly worded attempt to establish that OSP had standing in the GAF litigation. (*See id.*) In any event, it is for a finder of fact to assess the evidentiary value of Badie's statements.

property "for value and without notice of the breach of trust." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1068 (2d Cir.1995) (quoting Restatement (Second) of Trusts § 284 (1959)). Under New York trust law, it is a "well-recognized principle ... that a bona fide purchaser of trust assets receives the assets free of any claim by the trust beneficiaries." *Id.* at 1067 (citing Restatement § 284).[10]

"[I]f the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid value for the transfer." Restatement § 288. In order for the transferee to be bound by the trust, it is not enough that it had notice of the existence of the trust. Rather, the transferee takes subject to the trust only if it had notice that the trustee breached the trust in making the transfer. *See id.* § 296. The transferee will be charged with notice of a breach of trust if it knew or should have known of the breach. *See Terrydale Liquidating Trust v. Barness*, 611 F.Supp. 1006, 1031 & n. 44 (S.D.N.Y. 1984) (citing Restatement § 297(a) & cmt. a.).[11] If the transferee had notice that the trustee was breaching a trust, regardless of "whether the breach of trust [was] intentional or negligent," Restatement § 288 cmt. a, the transferee can be compelled to restore the asset to the trust. *Id.* § 291(1)(a).

Assuming *arguendo* the existence of a trust and a breach of that trust, whether SK&I took without notice is a disputed issue of material fact. Based upon Kronenberg's presence at the dinner where the reconveyance of the copyright allegedly was discussed, his admission that the purpose of the 1993 Assignment was to enable OSP/Top Banana to enforce Masudaya's copyright, and his involvement in the OSP*SK&I assignments, a reasonable finder of fact could conclude that Kronenberg, acting on behalf of SK&I, had notice of OSP's breach or trust and therefore that SK&I was not a bona fide purchaser.

Accordingly, whether Masudaya created an express trust and whether SK&I took the copyright subject to that trust are questions of material fact precluding summary judgment on these issues.

### D. *Constructive Trust*

■ Masudaya contends that even if no express trust was created, the circumstances surrounding the 1993 Assignment require the imposition of a constructive trust on the copyright.[12] A constructive trust is an equitable remedy, not a legal relationship. *Oneida Indian Nation of New York v. State of New York*, 691 F.2d 1070, 1096 (2d Cir. 1982); *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 363, 380 N.E.2d 189, 193 (1978). It has been described as "the formula through which conscience of equity finds

10. The parties also debate whether, and if so how, the Copyright Act's "bona fide purchaser" provision applies in this action. Section 205(d), entitled "Priority Between Conflicting Transfers," states in relevant part:

> As between two conflicting transfers, the one executed first prevails if it is recorded ... at any time before recordation ... of the later transfer. Otherwise the later transfer prevails if recorded first ... and if taken in good faith, for valuable consideration ..., and without notice of the earlier transfer.

17 U.S.C. § 205(d). The Court need not resolve this issue at this time. Even if § 205(d) where applicable here. whether SK&I took as a transferee in good faith under § 205(d) is in dispute for the same reasons SK&I's status as a bona fide purchaser under Masudaya's express trust theory is in dispute.

11. A transferee will be charged with constructive knowledge of the trustee's breach "when he

knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee is a trustee and whether he is committing a breach of trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know *that the trustee is committing a breach of trust.*" Restatement § 297 cmt. a. The Restatement lists several factors as relevant to this determination, including: (1) whether the transferee knows or has reason to know that the person with whom he is dealing is a trustee; (2) the character of the transferred property; (3) whether the transaction is one in the ordinary course of business of the trustee; and (4) whether the trustee is disposing of the property for much less than its real value. *See id.*

12. A copyright may be the subject of a constructive trust. *See, e.g., Stone v. Williams*, 970 F.2d 1043, 1052 (2d Cir.1992).

expression." *Republic of Philippines v. Marcos,* 806 F.2d 344, 355 (2d Cir.1986) (quoting *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.)). As such, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* (quoting *Beatty,* 225 N.Y. at 386, 122 N.E. at 380). In short, "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice." *Id.* (quoting *Simonds,* 408 N.Y.S.2d at 363, 380 N.E.2d at 194).

■ More specifically, New York law generally requires that a party establish four elements before a constructive trust may be imposed: (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer made in reliance on that promise; (4) and unjust enrichment. *See Brand v. Brand,* 811 F.2d 74, 77 (2d Cir.1987); *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 75, 351 N.E.2d 721, 723 (1976). However, these elements are not talismanic; a court may impose a constructive trust in the absence of some of the factors. *See United States v. Coluccio,* 51 F.3d 337, 340 (2d Cir.1995); *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 352–53 (2nd Cir. 1992); *Simonds,* 408 N.Y.S.2d at 363, 365, 380 N.E.2d at 194, 195.

■ Moreover, subsequent transfers of the trust property do not necessarily preclude a constructive trust. "If a constructive trust is otherwise appropriate, it will be imposed unless the party who received the property is a bona fide purchaser ...." *Majer v. Schmidt,* 564 N.Y.S.2d 722, 725, 169 A.D.2d 501, 503 (1st Dep't 1991) (citing *Simonds,* 408 N.Y.S.2d at 364, 380 N.E.2d at 194); *see also Hazlett v. Fusco,* 576 N.Y.S.2d 427, 429, 177 A.D.2d 813, 815 (3rd Dep't 1991) ("[T]he beneficiaries of a constructive trust have the option of tracing the trust property ... into the hands of third parties not involved in the relationships that initially gave rise to the constructive trust if unjust enrichment would otherwise result and the third party is not a bona fide purchaser.")

■ Turning to the first constructive trust element, in general a confidential relationship is "a relationship arising out of a close and intimate association which creates and inspires trust and confidence between the parties." 106 N.Y. Jur. Trusts § 157 (2nd Ed.1993); *see also Mia Shoes, Inc. v. Republic Factors Corp.,* No. 96 civ. 7974, 1997 WL 525401, at *2 (S.D.N.Y. Aug.21, 1997) ("The essential feature of a fiduciary relationship is reliance by one party on the integrity or discretion of another."). The existence of a confidential relationship is a question of fact. *Crown Realty Co. v. Crown Heights Jewish Community Council,* 572 N.Y.S.2d 38, 39, 175 A.D.2d 151, 151 (2nd Dep't 1991) (citing *Mendel v. Hewitt,* 555 N.Y.S.2d 899, 900, 161 A.D.2d 849, 850 (3rd Dep't 1990)); *see also Williams v. Lynch,* 666 N.Y.S.2d 749, 751–52, —— A.D.2d ——, (3rd Dep't 1997).

■ Ordinarily, a conventional, arms-length commercial relationship does not give rise, in and of itself, to a confidential or fiduciary relationship. *See In re Koreag,* 961 F.2d at 353; *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 426 (S.D.N.Y.1992); *Feigen v. Advance Capital Mgmt. Corp.,* 541 N.Y.S.2d 797, 799, 150 A.D.2d 281, 283 (1st Dep't 1989); *see also Northeast Gen. Corp. v. Wellington Advertising, Inc.,* 82 N.Y.2d 158, 604 N.Y.S.2d 1, 3, 624 N.E.2d 129, 131 (1993) ("If the parties find themselves or place themselves in the milieu of the 'workaday' mundane marketplace, and if they do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion a stricter duty for them."). Here, however, the transaction on which a confidential of fiduciary relationship allegedly was based— the 1993 Assignment—was not an ordinary, arms-length commercial transaction. It is undisputed that Masudaya assigned the Aqua World copyright so that OSP/Top Banana could bring a copyright infringement action on its behalf. (*See* Kronenberg Dep. at 40–42, 44; SK&I Mem. in Support of Mot. for Summ. J., at 1; SK&I's Reply to Masudaya's Rule 56.1 Statement ¶¶ 34–35.) In assigning the copyright, Masudaya could be viewed as having placed its trust in OSP/Top Banana to

protect its copyright interests. That for purposes of the GAF litigation, Masudaya and OSP/Top Banana in effect shared James Badie as their attorney, underscores their unity of interests and the absence of arms-length bargaining. Upon these facts, a reasonable finder of fact could conclude that their relationship was one of trust and confidence and that OSP/Top Banana was bound to act accordingly.

In any event, a constructive trust may be imposed even in the absence of a confidential or fiduciary relationship. *See In re Koreag*, 961 F.2d at 353–54 (citing *Simonds*, 408 N.Y.S.2d at 363, 380 N.E.2d at 194); *In re Moravia Surplus & Supplies, Inc.*, No. 95–cv–1281, 1997 WL 538900, at *3 (N.D.N.Y. Aug.28, 1997); *Lines v. Bank of America Nat'l Trust & Sav. Ass'n*, 743 F.Supp. 176, 180 (S.D.N.Y.1990).

With respect to the second element, a promise may be inferred from the circumstances surrounding the transfer. *See Brand*, 811 F.2d at 78; *Sharp*, 386 N.Y.S.2d at 75, 351 N.E.2d at 723. Although the existence of an implied promise is a question of law, identifying the surrounding circumstances is a factual determination. *Brand*, 811 F.2d at 78.

Masudaya contends that a promise can be inferred solely from SK&I's acknowledgment that the purpose of the 1993 Assignment was to enforce Masudaya's copyright. However, the Court believes that such an inference cannot be made until the facts surrounding the transfer, including the contentions in the Angard Declaration, are assessed by a finder of fact. In addition, whether Masudaya transferred the copyright in reliance on an implied promise—the third constructive trust element—cannot be determined until a promise has been established.

The fourth and final element—unjust enrichment—"lies at the heart of the equitable remedy of a constructive trust." *Brand*, 811 F.2d at 80 (citing *Sinclair*, 235 N.Y. at 253, 139 N.E. at 258 ("It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion.")); *see also In re Koreag*, 961 F.2d at

354 ("the key factor is unjust enrichment"). "Unjust enrichment does not require the performance of any wrongful act by the party enriched.... Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." *Simonds*, 408 N.Y.S.2d at 364, 380 N.E.2d at 194 (citations and internal quotation marks omitted); *see also In re Koreag*, 961 F.2d at 354; *Brand*, 811 F.2d at 80–81. The unjustly enriched party may be a subsequent transferee. *See Hazlett*, 576 N.Y.S.2d at 429, 177 A.D.2d at 815. The existence of unjust enrichment "is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *Brand*, 811 F.2d at 81 (quoting *Sharp*, 386 N.Y.S.2d at 76, 351 N.E.2d at 724).

Given that the undisputed purpose of the 1993 Assignment was to *protect* Masudaya's copyright from infringement, it may seem anomalous to allow the copyright to be enforced *against* Masudaya. However, without a determination by a finder of fact of the "circumstances surrounding the transfer of property and the relationship of the parties," this conclusion cannot be reached as a matter of law.

In any event, even if it were determined, after further factual findings, that a constructive trust is otherwise appropriate, Masudaya's equitable interest could prevail only if SK&I was not a bona fide purchaser. *See Hazlett*, 576 N.Y.S.2d at 429, 177 A.D.2d at 815; *Majer*, 564 N.Y.S.2d at 725, 169 A.D.2d at 503. As previously discussed, this is a question of fact and thus precludes summary judgment on the constructive trust issue.

## V.  *Laches*

SK&I also asserts that the doctrine of laches bars Masudaya from claiming equitable ownership in the copyright. The equitable defense of laches requires a showing of unreasonable delay by the party seeking equitable relief, resulting in prejudice to the party against whom the relief is sought.

See *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 259 (2nd Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997); *Cohen v. Krantz,* 643 N.Y.S.2d 612, 614, 227 A.D.2d 581, 582 (2d Dep't 1996). Under the facts of this case, the Court cannot find that Masudaya unreasonably delayed in asserting its claim to the copyright. Until OSP assigned the copyright to SK&I in mid–1996, Masudaya had no reason to believe that OSP would act inconsistently with its purported obligations to Masudaya. Moreover, until Masudaya was impleaded in this action and SK&I asserted amended counterclaims of infringement against it—that is, until less than one year ago—it had no reason to formally assert its ownership in the copyright. SK&I's laches argument is, therefore, without merit.

## CONCLUSION

For the reasons discussed above, the Court denies both Masudaya's and SK&I's summary judgment motions. The parties should be prepared at the March 24, 1998 conference to discuss the scheduling of a trial date in this matter.

SO ORDERED.