■ MICHELE B. MAJER et al., Respondents, v PETER G. SCHMIDT et al., Defendants, and CREDIT SUISSE, Appellant. MICHELE B. MAJER et al., Respondents, v ALEXANDER AGHAYAN, Appellant, et al., Defendants. MICHELE B. MAJER et al., Respondents, v PETER G. SCHMIDT et al., Defendants, and THOMAS FORREST et al., Appellants. MICHELE B. MAJER et al., Appellants, et al., Plaintiffs, v PETER G. SCHMIDT et al., Defendants, and PETERSVILLE SLEIGH LIMITED et al., Respondents.— Order, Supreme Court, New York County (Francis Pecora, J.), entered on May 11, 1990, which, *inter alia,* denied the motion by defendant Alexander Aghayan to dismiss the complaint as against him pursuant to CPLR 3211 (a) (7), granted the motion by defendants Petersville Sleigh Limited, H.C. and Sleigh North America, Inc., H.C. (now St. James North America, Inc [the Sleigh defendants]) to dismiss the seventh cause of action pursuant to CPLR 3211 (a) (7), and denied the motion by defendant Credit Suisse to dismiss the complaint as against it pursuant to CPLR 327, 501 and 3211 (a) (2), unanimously modified, on the law, to reverse the dismissal of and reinstate the seventh cause of action as against the Sleigh defendants, and otherwise affirmed, without costs.

Order of the same court, entered on or about May 11, 1990, which, *inter alia,* denied the motion by defendants Thomas Forrest and Filbin, Ltd. to dismiss the complaint pursuant to CPLR 3211 (a) (7) as against them with leave to renew after completion of discovery, unanimously affirmed, without costs.

The instant litigation arises out of a series of frauds perpetrated by defendant Peter G. Schmidt, an attorney, upon various of his clients, including the estate of Michael Burke (the Estate).

The complaint alleged, *inter alia,* that defendant Alexander Aghayan, as a former partner of defendant Schmidt in the dissolved law firm of Schmidt, Aghayan & Saide, was liable to the Estate for Schmidt's conversion of $1,800,000 of the Estate's funds to pay a predissolution liability of the law firm to its former clients, the Sleigh defendants. This liability had been incurred in settlement of a Federal action entitled *Petersville Sleigh v Schmidt,* brought in the United States District Court for the Southern District of New York by the Sleigh defendants against, *inter alia,* Schmidt and his partners, for breach of an escrow agreement, breach of fiduciary duty, fraud, and conversion. The complaint herein alleged that

Aghayan, as a general partner of the firm, was jointly and severally liable for defendant Schmidt's wrongdoing in converting the Estate's funds to satisfy the joint and several liability of defendants Schmidt, Aghayan and the law firm to the Sleigh defendants in the Federal action. Additionally, it alleged that the Estate was subrogated to the rights of the Sleigh defendants against defendant Aghayan, which, it claimed, survived in spite of the general release given to Aghayan as part of the settlement in the Federal action.

Under the circumstances presented herein, we find that defendant Aghayan's motion to dismiss was properly denied. If construed favorably toward plaintiffs, the pleadings were sufficient to allege that defendant Aghayan had been, and had held himself out as, a partner to defendant Schmidt in the law firm of Schmidt, Aghayan & Saide, and that defendant Schmidt's conversion of the Estate's funds, after dissolution of the partnership, was an act "appropriate for winding up partnership affairs or completing transactions unfinished at dissolution" within the meaning of New York Partnership Law § 66 and therefore binding upon the partners. Moreover, as to the motion to dismiss the equitable subrogation claim, if the Estate can establish that the general release received by Aghayan from the Sleigh defendants in settlement of the Federal action was, as alleged, bought and paid for by Schmidt with moneys stolen from the Estate, that release cannot serve to bar a claim by the Estate that it is subrogated to all the rights, benefits and remedies that the Sleigh defendants had against Aghayan prior to the time payment was made. (See, *Pittsburgh-Westmoreland Coal Co. v Kerr,* 220 NY 137; 5 Scott, Trusts §§ 464, 513 [4th ed 1989].)

However, we find that the IAS court improperly dismissed the seventh cause of action, which seeks the imposition of a constructive trust upon $1,800,000 received by the Sleigh defendants in settlement of the Federal action. A constructive trust may be imposed where "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest" *(Beatty v Guggenheim Exploration Co.,* 225 NY 380, 386). While there is no set formula for determining when such a trust should be imposed, the factors which have been identified as relevant include the existence of a confidential or fiduciary relationship, a promise, express or implied, a transfer in reliance on that promise and unjust enrichment. *(Simonds v Simonds,* 45 NY2d 233.) Here, there is no question that there was a fiduciary relationship between the Estate and defendant

Schmidt, its attorney. Moreover, implicit in that relationship was an implied promise by Schmidt to deal honestly with the Estate's assets. While the transfer involved was effectuated by means of a forgery rather than induced by Schmidt's promise it is clearly within the type of misconduct which calls for the imposition of a constructive trust, which "will be erected whenever necessary to satisfy the demands of justice [and is] * * * limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *(Latham v Father Divine,* 299 NY 22, 27.) Surely the instant case, involving allegations of outrageous fraud perpetrated upon his clients by an attorney, who was able to prolong his career of fraud only by settling with one client with funds stolen from another, is one which calls for the intervention of equity.

As to the fourth requirement, of unjust enrichment, it is not necessary that the Estate show that the Sleigh defendants have been parties to the wrongful acquisition. *(Plotnickoff v Finkelstein,* 105 AD2d 10.) Rather, if a constructive trust is otherwise appropriate, it will be imposed unless the party who received the property is a bona fide purchaser, i.e., one who took without notice that it had been wrongfully obtained *(Simonds v Simonds, supra).* Here, plaintiffs have alleged certain facts which they claim were sufficient to establish that the Sleigh defendants had constructive notice that the moneys they received had been converted from the trust, thereby establishing their lack of bona fides. It has long been recognized that, where the owner of property of which he or she has been defrauded seeks to set aside a subsequent transfer, constructive notice of the fraud, if properly established, will prevent the transferee from claiming that he or she is a bona fide purchaser. *(Bonham v Coe,* 249 App Div 428, *affd* 276 NY 540; 5 Scott, Trusts § 476, at 383 [4th ed]; *cf., Parker v Conner,* 93 NY 118.) We find that, viewing the allegations, as we must on a motion addressed to the pleadings, as true and in a light most favorable to plaintiffs *(219 Broadway Corp. v Alexanders, Inc.,* 46 NY2d 506), they are legally sufficient to support a finding of constructive notice.

A person is chargeable with constructive notice of any fact which would have been disclosed by a reasonably diligent inquiry if circumstances are such as to indicate to a person of reasonable prudence and caution the necessity of making inquiry to ascertain the true facts and he or she avoids such inquiry (81 NY Jur 2d, Notice and Notices, §§ 7, 9, 21; *see also, Fidelity & Deposit Co. v Queens County Trust Co.,* 226 NY

225). Here, plaintiffs' allegations showed that, at the time they accepted the money, the Sleigh defendants were aware that defendant Schmidt had committed numerous fraudulent and criminal acts, that he was in financial difficulties, and that the information he had given concerning the source of the money was patently false. Plaintiffs alleged that, in the middle of March 1987, Schmidt had informed the Sleigh defendants that defendant Richard Freeman, a solicitor, had been irrevocably instructed by his client, defendant Henry Edward Cubitt, Lord Ashcombe, to transfer between $1,600,000 and $1,800,000 to the Sleigh defendants from a Credit Suisse account held by a discretionary trust of Ashcombe's within, at the very latest, 10 days. Schmidt confirmed this with a telegram which was purportedly from Freeman, though it had allegedly been forged by Schmidt himself. It is further alleged that, contrary to the information communicated, the funds (which had, in fact, been converted from the plaintiff Estate) were not actually paid to the Sleigh defendants until June 1, 1987, some two months later, and that they were paid over by wire transfer from an account at Manufacturers & Traders Bank held in the name of "Schmidt & Associates" and not from a Credit Suisse trust account. Particularly when combined with the Sleigh defendants' knowledge of Schmidt's prior frauds, the allegations showing that all of the information he had given them concerning the source of the money was false raised a sufficient suspicion to compel a reasonable and prudent person to question whether he had obtained the $1,800,000 legally. Thus, this case is substantially different from *Stephens v Board of Educ.* (79 NY 183), which was relied on by the IAS court. In *Stephens,* the court specifically relied on the fact that no suspicion had been cast upon the bona fides of the party who received the allegedly tainted money, in finding that such party took it in good faith without notice of the antecedent fraud.

We reject the contention of the Sleigh defendants that any duty to inquire was satisfied when their attorney made a phone call to Lord Ashcombe in March during which Ashcombe falsely assured them that he would indeed transfer the funds to them from Switzerland within two weeks. Since, according to plaintiffs' allegations, this phone call was made before the two-month delay, at most it could only have confirmed the original plan proposed by Schmidt and could have done nothing to dispel the suspicions which should have arisen when that plan did not proceed as promised. This is particularly significant in view of plaintiffs' allegations that

the only subject discussed with Ashcombe during the phone call was confirmation that the transfer would be made and that defendants did not inquire of Ashcombe, with whom they had had no prior dealings, as to the actual source of the funds.

We find that the IAS court did not abuse its discretion in denying the motion of defendant Credit Suisse seeking to dismiss the complaint on the grounds of improper venue and forum non conveniens. (See, Silver v Great Am. Ins. Co., 29 NY2d 356.) Contrary to Credit Suisse's assertions, the forum selection clause in article 14 of the account agreement between the Estate's decedent and defendant Credit Suisse did not designate Zurich, Switzerland, as the sole proper venue of the underlying action, but, rather, contained ambiguous language, which must be construed against the drafter, Credit Suisse, and in favor of the Estate's selected forum, New York (see, 67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245).

Similarly, the record reveals that considerations of justice, fairness and the convenience of the parties also indicate that Credit Suisse's motion to dismiss on forum non conveniens grounds was properly denied. The Estate, its coexecutors and the officers of Credit Suisse are located in New York, the stolen funds that form the basis of the underlying action were paid in New York, by a New York bank, based upon a forged document prepared and delivered in New York, and the essential witnesses are located in New York. (See, Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65; Islamic Republic v Pahlavi, 62 NY2d 474, cert denied 469 US 1108.)

Finally, we find that the motion by defendants Thomas Forrest and Filbin, Ltd. to dismiss the complaint as against them for failure to state a cause of action and for lack of personal jurisdiction was properly denied with leave to renew upon completion of discovery. The pleadings, viewed favorably to plaintiffs, are sufficient to state a claim that the Estate is equitably subrogated to a claim for $123,000 based on the allegations that these defendants empowered defendant Schmidt to act as their agent in securing a line of credit in New York and also empowered him to withdraw money from the credit account, that they were thereby made liable for the loan which was obtained by defendant Schmidt from the New York office of the Citizens Fidelity Bank, and that the loan was repaid by Schmidt partly through the use of $123,700 stolen from the Estate. (See, Pittsburgh-Westmoreland Coal Co. v Kerr, supra; 5 Scott, Trusts §§ 464, 513 [4th ed].)

We have considered the remaining contentions raised by the

appellants on their respective appeals and find them to be without merit. Concur—Carro, J. P., Rosenberger, Kassal, Ellerin and Wallach, JJ.