**MID–VALLEY PRODUCE CORP., etc., Plaintiffs,**

**v.**

**4–XXX PRODUCE CORP., et al., Defendants/Third–Party Plaintiffs,**

**v.**

**Herbert O. CASSIDY, et al., Third–Party Defendants.**

**No. CV 92–0331.**

United States District Court, E.D. New York.

April 22, 1993.

Mark C.H. Mandell, New York City, for plaintiffs.

Richard A. Miller, Islandia, NY, for defendants/third-party plaintiffs.

John J. McNulty, Riverhead, NY, for third-party defendant Cassidy.

Jakubowski, Robertson & Goldsmith, Hauppauge, NY, for third-party defendant Ludlum.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Mid–Valley Sales Corp. (also referred to as Mid–Valley Produce Corp.) ("MVS") and Probiotic Marketing of Idaho, Inc. ("PMI") ("plaintiffs") bring the instant suit against 4–XXX Produce Corp. ("4–XXX"), Philip Melfi and Alice Melfi (collectively, "defendants") pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.*, seeking payment for $185,012.32 of potatoes sold to 4–XXX in 1991. Defendants have impleaded Herbert O. Cassidy ("Cassidy") and Harry D. Ludlum ("Ludlum") ("third-party defendants"), former officers of 4–XXX, seeking indemnification and or contribution as to any sums for which defendants are found liable. Now before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure between plaintiffs and defendants and between third-party plaintiffs and third-party defendants. For the reasons stated below, plaintiffs' motion is granted in part and denied in part; all other motions are denied.

### I. BACKGROUND

The following material facts are not disputed by the parties. Alice Melfi was the sole shareholder of 4–XXX during 1991, but she was never an officer, director or employee of the company and she did not participate in its management. Her husband, Philip Melfi, was president of 4–XXX since June 1991, had authority to sign checks for the corporation since 1990, and earned approximately $150,000 in salary and commissions from 4–XXX in 1991.

On or about August 31, 1989, Philip Melfi gave his wife a 4–XXX check for $250,000 made out to her name. Alice Melfi deposited this check in her personal checking account and then returned the proceeds to her husband. The money, which was apparently intended as a loan to Philip and/or Alice Melfi to finance the construction of their private house, was allegedly given to Philip Melfi to induce him to work for 4–XXX. It was to be repaid when the Melfis obtained a mortgage on the house. Although they subsequently did obtain such a mortgage, the loan was never repaid in full. The Melfis' house is held solely in Alice Melfi's name.

In 1991, Philip Melfi wrote two 4–XXX checks totalling $113,000 to Nick Melfi Enterprises, allegedly in partial repayment of a loan that Nick Melfi Enterprises had made to 4–XXX. Nick Melfi Enterprises, whose address is Philip and Alice Melfi's home address, is a corporation wholly owned by Philip Melfi and his sister, and was apparently formed solely for the purpose of distributing property from their father's estate.

Plaintiff MVS is owed $56,375 for various truck loads of fresh Maine potatoes sold to 4–XXX in the Spring of 1991. Within the 30-day period after 4–XXX failed to pay for the commodities, MVS filed timely written notices with 4–XXX and with the Secretary of Agriculture indicating its intent to preserve its rights under the PACA trust provisions.[1]

---

1. In addition, prior to the commencement of this action, MVS filed a formal complaint with the

United States Department of Agriculture seeking reparation for 4–XXX's alleged violations of

Similarly, PMI is owed $128,637.32 for shipments of fresh Idaho potatoes sold to 4–XXX during the later half of 1991. PMI also filed timely PACA trust notices regarding its transactions.

On numerous occasions, MVS and PMI delivered perishable goods to 4–XXX and received payment well beyond the period of time when such payment was due pursuant to the written agreements between the parties. Defendants contend that as a result of this "course of dealing," the PACA trust provisions are not applicable to this case.

## II. DISCUSSION

### A. "Course of Dealing" Defense Under PACA

■ In 1984, Congress amended PACA by creating a statutory trust which must be maintained by purchasers of fresh produce who are licensed under PACA in favor of unpaid suppliers and sellers of such commodities. The trust attaches to all commodities, assets and inventories, including receivables and proceeds derived from the sale of such commodities by the PACA licensees. 7 U.S.C. § 499e(c). It is undisputed that 4–XXX was a PACA licensee. It is also undisputed that plaintiffs have not been paid for their produce and that they have filed timely written notices to preserve their rights as PACA trustees.

PACA establishes a 10–day time period within which a PACA seller must be paid. 7 C.F.R. § 46.2(aa)(5). However, before entering a transaction, the parties, by written agreement, can extend this time period up to 30 days without negating the PACA trust provisions. 7 C.F.R. § 46.46(1) & (2). Any written agreement extending the payment period beyond 30 days would negate those provisions. In the instant case, MVS and PMI had entered into written agreements

with 4–XXX, extending the period for payment to 30 days and 20 days respectively.

Defendants have shown, however, that on numerous occasions, 4–XXX paid plaintiffs for their produce well beyond the time provided for in their written agreements. Defendants contend that by allowing 4–XXX, through the course of their dealings, to extend payment terms beyond the statutory time period, plaintiffs have waived the protection of the PACA trust provisions. They rely entirely on *In re Lombardo Fruit & Produce*, 107 B.R. 952 (Bkrtcy.E.D.Mo.1989), *aff'd in part and rev'd in part*, 1993 WL 34648, 150 B.R. 941 (E.D.Mo.1993).[2]

In *Lombardo*, the bankruptcy court found that in the course of a 29 year business relationship, only 1 of 122 transactions was paid for on time and in accordance with the terms of the parties' written agreement. The *Lombardo* court held that by engaging in such a course of conduct, the written agreement was a sham and the seller waived its PACA trust benefits. *Lombardo*, 107 B.R. at 958–59. Defendants urge this court to apply that reasoning to the instant case.

Plaintiffs respond by noting that similar "course of dealing" defenses have been rejected by every other court that has examined the issue. *See Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 782–83 (8th Cir. 1991) (in order to give effect to the legislative intent and remedial purposes of PACA, "oral agreements have no effect on produce sellers' [PACA] trust protection"); *Continental Fruit v. Thomas J. Gatziolis & Co.*, 774 F.Supp. 449, 452 (N.D.Ill.1991); *see also In re Gotham Provision Co., Inc.*, 669 F.2d 1000, 1007 (5th Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982) (denying a course of dealing defense under the Packers & Stockyard Act, the statute on which PACA is modeled); *In re G & L Packing Co., Inc.*, 41 B.R. 903, 914, n. 8 (N.D.N.Y.1984) (same); *Hedrick v. S. Bonac-*

PACA. On April 15, 1992, after 4–XXX failed to respond to service of the complaint, the Secretary of Agriculture issued a Reparation Order in favor of MVS.

**2.** In defendant's Third Affirmative Defense they plead the "poor economic climate" as the reason for their failure to pay. However, under PACA "an action is willful if a prohibited act is done

intentionally, irrespective of evil intent, or done with careless disregard of statutory requirements." *Finer Foods Sales Co., Inc. v. Block*, 708 F.2d 774, 778 (D.C.Cir.1983). Defendants do not pursue this defense in their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment.

*curso & Sons, Inc.,* 466 F.Supp. 1025 (E.D.Pa.1978) (same). Most significantly, the Eighth Circuit recently rejected the bankruptcy court's reasoning in *Lombardo,* finding that "[i]n light of the [*Hull*] court's implicit rejection of the course of dealing argument and its emphasis upon the necessity of written agreements to protect the interests of produce sellers, this Court concludes that neither [plaintiff] waived its right to demand payment within thirty days of delivery as a result of [its] course of dealing under the written agreements." *In re Lombardo,* at 946. This Court, agreeing with the Eighth Circuit decisions in *Hull* and *Lombardo,* holds that where, as in the instant case, plaintiffs comply with the written requirements of PACA's trust provisions, defendants' "course of dealing" defense must be rejected. Consequently, summary judgment is granted against defendant 4–XXX.

### B. *Personal Liability of Philip and Alice Melfi*

■ Plaintiffs seek to hold Philip and Alice Melfi personally liable for their losses. In general, individuals are not personally liable for a corporation's torts solely on the basis of their position as a corporate stockholder, officer or director. However, an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to the beneficiaries for that loss. *West Indian Sea Island Cotton Ass'n v. Threadtex, Inc.,* 761 F.Supp. 1041, 1054 (S.D.N.Y.1991); *In re Baird,* 114 B.R. 198, 204 (9th Cir. BAP 1990).

In the instant case, it is clear that Philip Melfi was the president of 4–XXX since at least June 1991[3]; that he drew a salary from 4–XXX of approximately $150,000 in 1991; and that he signed checks totalling $113,000, representing a loan repayment by 4–XXX to Nick Melfi Enterprises, a company controlled by Philip Melfi.

■ The use of PACA trust funds by 4–XXX for such items as salary and loan pay-

ments constitutes a dissipation of PACA trust funds and a breach of 4–XXX's fiduciary duties as trustee. *See C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311, 1314–15 (11th Cir.1992) (bank would be required to refund PACA trust funds it received as loan payments if it had notice of a breach of trust); *In re Richmond Produce Co., Inc.,* 112 B.R. 364, 376–78 (Bkrtcy. N.D.Cal.1990) (same); *Morris Okun, Inc. and Finest Fruits, Inc. v. Harry Zimmerman, Inc. and Harry Zimmerman,* 814 F.Supp. 346, 348–49 (S.D.N.Y.1993) (salary paid from PACA trust fund is dissipation of trust assets). Because Philip Melfi, as a corporate officer, knowingly caused 4–XXX to breach its duty as a trustee, he is personally responsible for the ensuing loss to the trust beneficiaries for those sums which he dissipated. *Id. See also In re Nix,* 1992 WL 119143 (M.D.Ga., April 10, 1992) (same). Thus, plaintiff's motion for summary judgment must be granted against Philip Melfi.

■ Although Alice Melfi owned 100% of the 4–XXX stock in 1991, she was never an officer, director, or employee of the company. Furthermore, in 1989, when the $250,000 4–XXX "loan" went through her checking account, she owned no 4–XXX stock and 4–XXX did not owe money to plaintiffs. Nevertheless, Plaintiffs seek to hold Alice Melfi personally liable on either the theory that she was no more than a "shill" for her husband or because "a 100% stockholder of a corporation must be presumed to be exercising some kind of control over the company's affairs." Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment at p. 9, n. 9; Plaintiffs' Reply Memorandum at p. 2.

Plaintiffs' first argument amounts to piercing the corporate veil. Although Alice Melfi admitted that she never attended any stockholders' meetings, and although it appears that other corporate formalities were exceedingly lax[4], there is insufficient evidence in

---

**3.** There is deposition testimony to the effect that he was the *de facto* president, in full control of 4–XXX, since May 1990.

**4.** For example, formal loan documents appear to be lacking as to the $250,000 loan to the Melfis

and Philip Melfi apparently assumed full control of 4–XXX well before he was formally made an officer in the corporation.

the record at this time to pierce the corporate veil. *See e.g. Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 853 (2d Cir.1985) (discussing factors that could lead to piercing of a corporate veil).

As to plaintiffs' second argument, they submit no authority for the proposition that a 100% stock holder must be presumed to exercise control over a company's affairs. Indeed, this Court believes that there are many small corporations in which an individual may own 100% of the stock and yet choose—for entirely legitimate purposes—not to exercise any day-to day control over the company's affairs. Consequently, plaintiffs' motion for summary judgment against Alice Melfi must be denied.[5]

### C.  Cross–Motions for Summary Judgment by Third–Party Plaintiffs and Third–Party Defendants

On March 10, 1993, third party plaintiffs served their "cross-motion" for summary judgment against third party defendants Ludlum and Cassidy. The motion has a return date of March 15, 1993.

■ Ludlum and Cassidy correctly note that this motion is not a cross-motion, that third-party plaintiffs had not obtained permission from this Court to file a motion for summary judgment as required by Rule 2 of the Court's Rules, and that the motion failed to provide for at least ten days notice as required by Rule 56(c). *See Winourne v. Eastern Airlines, Inc.,* 632 F.2d 219, 223 (2d Cir.1980) (noncompliance with notice provisions of Rule 56(c) is procedural defect which vitiates the entry of summary judgment); *see also* Court Rule 2(a) (requiring 15 days notice for all motions). For these reasons, the third-party motion for summary judgment is denied.

Rather than wait for the parties to file formal requests for permission to move for summary judgment, the Court will construe the papers it has already received as requests to make such motions. For the following reasons, these requests are denied.

■ Although Cassidy was listed as the president of 4–XXX until May 13, 1991, he notes deposition testimony from the corporate secretary to the effect that he had no actual responsibility in running the corporation since May or September 1990. Moreover, there is no evidence in the record tending to show that he breached his fiduciary duties to 4–XXX.[6]

Although Ludlum paid ten dollars for an option to purchase 4–XXX stock, he does not appear to have been a 4–XXX shareholder during the period at issue here. Furthermore, although he was listed as a vice-president of 4–XXX until May 2, 1991, he apparently considered that position to be "in name only" and he never exercised any control over 4–XXX's financial affairs.[7] As with Cassidy, there is no evidence in the record tending to show that either Ludlum or Cassidy breached any fiduciary duties to 4–XXX. Because, third-party defendants have raised material issues of fact relevant to any liability they may have as to 4–XXX, third-party plaintiffs may not file a new motion for summary judgment against them.

Plaintiffs, on the other hand, have not only shown that Cassidy and Ludlum were officers of 4–XXX at the time it was transacting business with MVS, but allege that (1) Cassidy and Ludlum had personally conducted

---

5. It is possible that plaintiffs may be able to establish a constructive trust on trust funds that Alice Melfi received without paying any consideration. *See European Amer. Bank v. Royal Aloha Vacation Club,* 704 F.Supp. 1233, 1245 (S.D.N.Y. 1989); *Majer v. Schmidt,* 564 N.Y.S.2d 722, 724, 169 A.D.2d 501 (1st Dep't 1991) ("constructive trust may be imposed 'where property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest' "). (citation omitted); *Hazlett v. Fusco,* 576 N.Y.S.2d 427, 428, 177 A.D.2d 813 (3d Dep't 1991) (same).

6. In an Order dated September 21, 1992, this Court held that third party defendants could only be liable for contribution or indemnification if it could be shown that they breached their fiduciary duty to 4–XXX in relation to plaintiffs' trust funds. The Melfis' third-party claims against Cassidy and Ludlum were dismissed.

7. Third-party defendants have shown the Court no authority for their apparent position that a person who is a corporate officer "in name only" owes no fiduciary responsibility to beneficiaries of corporate trusts.

business with MVS; (2) were aware that 4–XXX was late in its payments to MVS and to other trust beneficiaries in the spring of 1991; and (3) had received salaries and or commissions during that time period. Because third-party plaintiffs have raised these material issues, third-party defendants may not file a motion for summary judgment against them.

### CONCLUSION

Accordingly, for the aforementioned reasons, plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted as to defendants 4–XXX and Philip Melfi and denied as to defendant Alice Melfi. Third party plaintiffs' motion and third-party defendants' cross motions for summary judgment are denied.

SO ORDERED.